# EXHIBIT "2"

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | | Charge Presented to: | Agency(ies) Charge No(s): |
|---|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | | ___ FEPA<br>X   EEOC | 524-2021-01772 |

_____ and EEOC
State or local Agency, if any

| Name (indicate Mr. Ms. Mrs.)<br>Ms. Kelly Reitzer | Home Phone (Incl. Area Code)<br>(401) 808-0760 | Date of Birth<br>6/15/74 |
|---|---|---|
| Street Address<br>26 Shore Drive | City, State and ZIP Code<br>Warren, RI 02885 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I believe Discriminated Against Me or Others.  (If more than two, list under PARTICULARS below.)

| Name<br>Innovative Claims Strategies, LLC | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| Street Address<br>30 Knightsbridge Road, Suite 525-299 | City, State and ZIP Code<br>Piscataway, NJ 08854 | |
| Name | No. Employees, Members | Phone No. (Include Area Code) |
| Street Address | City, State and ZIP Code | |

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| __ RACE   __ COLOR  X  SEX __ RELIGION __ NATIONAL ORIGIN<br><br>__ RETALIATION __ AGE __ DISABILITY __ OTHER (Specify below.) | Earliest          Latest<br>1/17              2/3/21<br><br>__ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attached extra sheet(s)):

| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br><br>9/17/21<br>_____<br>Date        Charging Party Signature | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLANANT<br><br><br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year) |

JAVERBAUM WURGAFT HICKS
KAHN WIKSTROM & SININS, P.C.
Heidi R. Weintraub, Esquire / 008591993
James E. Burden, Esquire / 03331991
1000 Haddonfield-Berlin Road, Suite 203
Voorhees, NJ 08043
856-596-4100
Attorney for Claimant

| KELLY REITZER, | EEOC RIDER |
|---|---|
| Claimant, | |
| v. | |
| INNOVATIVE CLAIMS STRATEGIES, LLC, | |
| Respondent. | |

Kelly Reitzer, residing at 26 Shore Drive, Warren, Rhode Island 02885, hereby certifies the following to be true under the penalty of perjury:

## NATURE OF THIS ACTION

1.   This is an action to remedy sexual harassment in violation of the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII").

## PARTIES

2.   At all times relevant hereto, I was an employee of ICS as that term is defined by Title VII.

3.   At all times relevant hereto, ICS was my employer as that term is defined by Title VII.

4.   At all times relevant herein, ICS designs, implements and manages customized medical cost-containment and technology service models to its clients and provides assistance to those clients in an effort to contain medical costs and increase positive medical outcomes. ICS specializes in applying advanced communication and information-technology to

improve healthcare management for workers' compensation, health and automobile and liability claims management.

5.   At all times relevant hereto, ICS maintains offices for the transaction of business at 30 Knightsbridge Road, Suite 525-229, Piscataway, New Jersey 08854.

## COUNT ONE

### (Sexual Harassment in Violation of Title VII)

6.   On January 9, 2017, ICS hired me as its Vice President-Business Development.  Prior to my employment by ICS, I had over fifteen (15) years of experience in the field and had significant business contacts which I brought with me to my employment with ICS.

7.   My primary job duties included, but were not limited to, identifying and developing business relationships and opportunities that would generate organic growth for ICS.

8.   My compensation package included a base salary of $90,000 per year, as well as quarterly commissions of 3-5% depending on the size of the bill review volume or the size of the client, an additional payment of $150 to $200 for each Medicare Set-Aside ("MSA") referral that I obtained for the company and a monthly car allowance of $650.00.

9.   Thereafter, I met or exceeded ICS' performance expectations.

10.   I reported directly to ICS' Chief Operating Officer ("COO"), Carlos Navarro.

11.   As ICS' COO, Mr. Navarro was a member of ICS' "upper management" as that term is defined by Cavuoti v. New Jersey Transit Corp., 161 N.J. 107, 128-129 (1999) and was a decision-maker with respect to my employment.

12.   At all times relevant hereto, Kay Estes was ICS' Chief Executive Officer ("CEO").

13. As ICS' CEO, Ms. Estes was a member of ICS' "upper management" as that term is defined by Cavuoti v. New Jersey Transit Corp., 161 N.J. 107, 128-129 (1999) and was a decision-maker with respect to Ms. Reitzer's employment.

14. At all times relevant hereto, Mr. Navarro and Ms. Estes were engaged in a romantic relationship, which, as discussed herein, often negatively impacted my work environment.

15. In or about January, 2017, I visited Mr. Navarro and Ms. Estes' beach house located in Normandy Beach, New Jersey for my onboarding and to collect my company computer. Mr. Navarro and I went to dinner at a local restaurant. During the meal, Mr. Navarro made numerous sexual overtures towards me, and went so far as to trying to kiss me and grabbed my hands and legs. Mr. Navarro's conduct was unwelcome and I rejected Mr. Navarro's sexual advances.

16. In an effort to stop Mr. Navarro's unwanted sexual advances, I repeatedly called and texted Ms. Estes asking her to come to the restaurant. Even after Ms. Estes arrived, Mr. Navarro continued to grab my leg under the table. Again, this conduct was unwelcome and created a hostile work environment.

17. Mr. Navarro continued to sexually harass me during my employment with ICS. By way of example, and without limitation, in or about 2018, Mr. Navarro and I attended a business meeting in Maryland, at which time we met for dinner. During the meal, Mr. Navarro told me that he and Ms. Estes would not remain together as a couple if and when they could sell ICS. I interpreted this comment as a sexual overture and I rejected Mr. Navarro's sexual advance telling him that his personal life was none of her business.

18. Thereafter, in or about 2018, Mr. Navarro, Ms. Estes and I traveled to Norway on a company trip. After they returned, I asked Mr. Navarro to send me the photos he had taken

3

on the trip so that I could make a picture book for Ms. Estes. On April 4, 2018, at 6:11 a.m., Mr. Navarro sent me an email from his personal email carlosmnavarro25@gmail.com to my personal email kelly.reitzer@gmail.com attached to which was a link to the pictures. A true copy of Mr. Navarro's email is attached hereto as **Exhibit 1**. Contained in the pictures was a picture of Mr. Navarro's penis. While I still have the email from Mr. Navarro, the link with the pictures is no longer active and appears to have been deleted from the cloud. Thus, it appears that Mr. Navarro has destroyed and/or spoliated evidence in this case.

19.    I was upset and offended by Mr. Navarro's outrageous behavior and never sought nor welcomed any pictures of Mr. Navarro's penis. I forwarded Mr. Navarro's email to a friend, who confirmed that the link contained a picture of Mr. Navarro's penis.

20.    In or about November, 2019, Mr. Navarro, Ms. Estes, Farrah Betty, a new ICS employee, and I were in Galveston, Texas for a business-related conference. At one point, both Ms. Betty and Mr. Navarro left the building to smoke and were outside at the same time. When Ms. Betty returned, Ms. Estes became angry and belligerent towards her. When Mr. Navarro returned, he stated to both Ms. Betty and I that Ms. Estes was "upset" because she [Ms. Estes] thought that Ms. Betty was "outside sucking my cock." Both Ms. Betty and I were offended by this outrageous statement.

21.    On another occasion, I sent Mr. Navarro a LinkedIn post about an article that applied to our services, which was written by a woman. Mr. Navarro responded with a sexist comment noting that the author was "hot." Thus, Mr. Navarro made it clear that he viewed women simply as sex objects.

4

22.    During my employment with ICS, I and other employees were frequently exposed to Mr. Navarro and Ms. Estes' volatile relationship. Mr. Navarro and Ms. Estes frequently cursed and yelled at each other during business conference calls.

23.    Mr. Navarro continued to sexually harass me during my employment with ICS, despite my repeated rejections of his sexual advances and my request that he cease his sexually harassing comments and conduct.

24.    In or about the end of 2020, I asked Mr. Navarro about her unpaid commissions and Mr. Navarro responded that he would get back to me. Shortly thereafter, Mr. Navarro gave me a performance review. This was the first performance review I had ever received during my employment with the company, and it was extremely negative. There was no factual basis for the negative performance evaluation. For example, and without limitation, the revenue report Mr. Navarro prepared as part of the performance evaluation as completely inaccurate and misrepresented my true revenue generation.

25.    In addition, Mr. Navarro also claimed, for the first time, that I was being paid on a draw as opposed to a salary and that I was required to earn my "salary" and benefits revenue before I was entitled to any commission.

26.    Thus, after I complained about not being paid my commissions, Mr. Navarro retaliated against me by giving me a false performance evaluation and effectively changing my compensation structure in order to avoid paying me the commission that I had earned.

27.    After receiving the false performance evaluation, I formed the reasonable belief that ICS and/or Mr. Navarro were acting illegally and began to compile information to share with legal counsel in order to determine whether I had any viable causes of action against ICS. This action was protected conduct under Title VII.

5

28. As a result of the foregoing, on February 3, 2021, I was constructively discharged by ICS.

29. ICS, by and through the actions of Mr. Navarro, created a hostile work environment in violation of Title VII.

30. ICS acted negligently, recklessly or intentionally by:

   (a)    failing to have in place a well-publicized and enforced anti-sexual harassment policy;

   (b)    failing to mandate anti-sexual harassment training for its supervisors, managers, agents, and employees;

   (c)    failing to properly train its supervisors, managers, agents, and employees regarding compliance with any anti-sexual harassment policy promulgated by it;

   (d)    failing to properly supervise its supervisors, managers, agents, and employees to ensure compliance with any anti-sexual harassment policy promulgated by it;

   (e)    failing to make an unequivocal commitment from the top of the organization that any anti-sexual harassment policy is not just words but backed up by consistent practice;

   (f)    failing to protect Ms. Reitzer from sexual harassment in the workplace;

   (g)    explicitly or implicitly condoning sexual harassment by its supervisors, managers, agents, and employees; and

   (h)    failing to take appropriate disciplinary action against Respondent's supervisors, managers, agents and employees who sexually harassed Ms. Reitzer.

31. Based on the foregoing, ICS negligently, recklessly and/or intentionally failed to take prompt, appropriate and reasonable remedial action to prevent, stop and remedy the sexual harassment aimed at me. By and through its agents, ICS fostered a sexually harassing

atmosphere and allowed actions which constitute sexual harassment in violation of Title VII.

32.   ICS, with malice or willful or wanton disregard of my rights, fomented a hostile work environment in violation of Title VII.

33.   As a result of the foregoing, I have been harmed.

34.   As a direct and proximate result of ICS' knowing violations of my rights under Title VII, I have sustained economic losses, severe emotional distress, personal physical injury, humiliation, embarrassment, mental anguish and loss of personal dignity.

35.   I certify the statement made by me are true.  I am aware that if any of the foregoing statements made by me are false, I am subject to punishment.

By:__*Kelly Reitzer /s/*__
      KELLY REITZER

Dated: September 17, 2021

7

MID-C-000087-21  07/20/2021 12:44:04 PM  Pg 30 of 31 Trans ID: CHC2021141917

# EXHIBIT 1

## James E. Burden

| | |
|---|---|
| **From:** | James E. Burden |
| **Sent:** | Wednesday, July 7, 2021 5:07 PM |
| **To:** | James E. Burden |
| **Subject:** | FW: Norway_Trip - Invitation to collaborate |

---------- Forwarded message ----------
From: Carlos Navarro (via Google Drive) <carlosmnavarro25@gmail.com>
Date: Sat, Apr 14, 2018 at 6:11 AM
Subject: Norway_Trip - Invitation to collaborate
To: <kelly.reitzer@gmail.com>

**Carlos Navarro** has invited you to contribute to the following shared folder:

**Norway_Trip**

Norway pictures attached

Google Drive: Have all your files within reach from any device.

Google LLC, 1600 Amphitheatre Parkway, Mountain View, CA 94043, USA

Google

1

# Civil Case Information Statement

**Case Details: MIDDLESEX | Civil Part Docket# L-004486-21**

**Case Caption:** REITZER KELLY VS INNOVATIVE CLAIMS
ST RATEGIES

**Case Initiation Date:** 07/29/2021

**Attorney Name:** JAMES EDWARD BURDEN

**Firm Name:** JAVERBAUM WURGAFT HICKS KAHN
WIKSTROM & SININS

**Address:** 1000 HADDONFIELD-BERLIN RD STE 203
VOORHEES NJ 08043

**Phone:** 8565964100

**Name of Party:** PLAINTIFF : REITZER, KELLY

**Name of Defendant's Primary Insurance Company
(if known):** Unknown

**Case Type:** LAW AGAINST DISCRIMINATION (LAD) CASES

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 6 JURORS

**Is this a professional malpractice case?** NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same
transaction or occurrence)?** NO

**Are sexual abuse claims alleged by:** KELLY REITZER? NO

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE**
CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** YES

**If yes, is that relationship:** Employer/Employee

**Does the statute governing this case provide for payment of fees by the losing party?** YES

**Use this space to alert the court to any special case characteristics that may warrant individual
management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
**If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
**If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO   **Title 59?** NO   **Consumer Fraud?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the
court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

07/29/2021
Dated

/s/ JAMES EDWARD BURDEN
Signed

# EXHIBIT "3"

EEOC Form 161-B (01/2022)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Ms. Kelly Reitzer<br>26 Shore Drive<br>Warren, RI 02885 | From: | Newark Area Office<br>283-299 Market St, Suite 1703<br>Newark, NJ 07102 |
|---|---|---|---|

| EEOC Charge No.<br>**524-2021-01772** | EEOC Representative<br>**John Waldinger,**<br>**Area Director** | Telephone No.<br>**8623389417** |
|---|---|---|

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

More than 180 days have passed since the filing of this charge.

The EEOC is terminating its processing of this charge.

*Equal Pay Act (EPA): You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.*

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Digitally Signed By:Judy Keenan
04/26/2022

Enclosures(s)

**Judy Keenan**
**District Director**

cc:   **Jonathan Hill**
**Jonathan Hill**
**jhill@jehlawfirm.com**
**Carlos Navarro**
**INNOVATIVE CLAIMS STRATEGIES LLC**
**cnavarro@icstrategies.com**

**James Burden**
**JAVERBAUM JW WURGAFT/HICKS KAHN WIKSTROM & SINNIS P.C.**
**jburden@lawjw.com**

Enclosure with EEOC
Form 161-B (01/2022)

# INFORMATION RELATED TO FILING SUIT
# UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice.** Therefore, you should **keep a record of this date.** Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice.** (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

# EXHIBIT "4"

JAVERBAUM WURGAFT HICKS
KAHN WIKSTROM & SININS, P.C.
Heidi R. Weintraub, Esquire / 008591993
James E. Burden, Esquire / 03331991
1000 Haddonfield-Berlin Road, Suite 203
Voorhees, NJ  08043
856-596-4100
Attorney for Plaintiff

| | |
|---|---|
| KELLY REITZER, <br><br> Plaintiff, <br><br> v. <br><br> INNOVATIVE CLAIMS STRATEGIES, LLC, <br><br> Defendant. | SUPERIOR COURT OF NEW JERSEY <br> MIDDLESEX COUNTY <br> LAW DIVISION <br><br> Civil Action <br><br> Docket No.:  MID-L-4486-21 <br><br> **FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Kelly Reitzer, residing at 26 Shore Drive, Warren, Rhode Island 02885, by way

of First Amended Complaint against Defendant, Innovative Claims Strategies, LLC, says:

## NATURE OF THIS ACTION

1.    This is an action to remedy sexual harassment in violation of the New Jersey Law Against

Discrimination, N.J.S.A. 10:5-1, et seq. ("LAD") and Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e et seq. ("Title VII"), violation of the New Jersey Wage and Hour

Law, N.J.S.A. 34:11-1, et seq. ("the Wage and Hour Law") and retaliation in violation of

the New Jersey Wage and Hour Law, N.J.S.A. 34:11-4.10(a).

## VENUE

2.    Pursuant to Rule 4:3-2(b) venue is properly laid in Middlesex County because Innovative

Claims Strategies, LLC ("ICS") is located and does business in Middlesex County.

## PARTIES

3.  At all times relevant hereto, Plaintiff Kelly Reitzer (Ms. Reitzer") was an employee of ICS as that term is defined by the LAD, <u>N.J.S.A.</u> 10:5-5(f), Title VII and the Wage and Hour Law, <u>N.J.S.A.</u> 34:1104.1 (b).

4.  At all times relevant hereto, ICS was Ms. Reitzer's employer as that term is defined by the LAD, <u>N.J.S.A.</u> 10:5-5(e), Title VII and the Wage and Hour Law, <u>N.J.S.A.</u> 34:11-4.1(a).

5.  At all times relevant herein, ICS designs, implements and manages customized medical cost-containment and technology service models to its clients and provides assistance to those clients in an effort to contain medical costs and increase positive medical outcomes. ICS specializes in applying advanced communication and information-technology to improve healthcare management for workers' compensation, health and automobile and liability claims management.

6.  At all times relevant hereto, ICS maintains offices for the transaction of business at 30 Knightsbridge Road, Suite 525-229, Piscataway, New Jersey 08854.

### COUNT ONE

### (Sexual Harassment in Violation of the LAD)

7.  On January 9, 2017, ICS hired Ms. Reitzer as its Vice President-Business Development. Prior to her employment by ICS, Ms. Reitzer had over fifteen (15) years of experience in the field and had significant business contacts which she brought with her to her employment with ICS.

8.     Ms. Reitzer's primary job duties included, but were not limited to, identifying and developing business relationships and opportunities that would generate organic growth for ICS.

9.     Ms. Reitzer's compensation package included a base salary of $90,000 per year, as well as quarterly commissions of 3-5% depending on the size of the bill review volume or the size of the client, an additional payment of $150 to $200 for each Medicare Set-Aside ("MSA") referral she obtained for the company and a monthly car allowance of $650.00.

10.     Thereafter, Ms. Reitzer met or exceeded ICS' performance expectations.

11.     Ms. Reitzer reported directly to ICS' Chief Operating Officer ("COO"), Carlos Navarro.

12.     As ICS' COO, Mr. Navarro was a member of ICS' "upper management" as that term is defined by Cavuoti v. New Jersey Transit Corp., 161 N.J. 107, 128-129 (1999) and was a decision-maker with respect to Ms. Reitzer's employment.

13.     At all times relevant hereto, Kay Estes was ICS' Chief Executive Officer ("CEO").

14.     As ICS' CEO, Ms. Estes was a member of ICS' "upper management" as that term is defined by Cavuoti v. New Jersey Transit Corp., 161 N.J. 107, 128-129 (1999) and was a decision-maker with respect to Ms. Reitzer's employment.

15.     At all times relevant hereto, Mr. Navarro and Ms. Estes were engaged in a romantic relationship, which, as discussed herein, often negatively impacted Ms. Reitzer's work environment.

16.     In or about January, 2017, Ms. Reitzer visited Mr. Navarro and Ms. Estes' beach house located in Normandy Beach, New Jersey for her onboarding and to collect her company computer. Ms. Reitzer and Mr. Navarro went to dinner at a local restaurant. During the meal, Mr. Navarro made numerous sexual overtures towards Ms. Reitzer, and went so far

as to trying to kiss Ms. Reitzer and grabbed her hands and legs. Mr. Navarro's conduct was unwelcome and Ms. Reitzer rejected Mr. Navarro's sexual advances.

17. In an effort to stop Mr. Navarro's unwanted sexual advances, Ms. Reitzer repeatedly called and texted Ms. Estes asking her to come to the restaurant. Even after Ms. Estes arrived, Mr. Navarro continued to grab Mr. Reitzer's leg under the table. Again, this conduct was unwelcome and created a hostile work environment.

18. Mr. Navarro continued to sexually harass Ms. Reitzer during her employment with ICS. By way of example, and without limitation, in or about 2018, Ms. Reitzer and Mr. Navarro attended a business meeting in Maryland, at which time they met for dinner. During the meal, Mr. Navarro told Ms. Reitzer that he and Ms. Estes would not remain together as a couple if and when they could sell ICS. Ms. Reitzer interpreted this comment as a sexual overture and rejected Mr. Navarro's sexual advance telling him that his personal life was none of her business.

19. Thereafter, in or about 2018, Ms. Reitzer, Mr. Navarro and Ms. Estes traveled to Norway on a company trip. After they returned, Ms. Reitzer asked Mr. Navarro to send her the photos he had taken on the trip so that she [Ms. Reitzer] could make a picture book for Ms. Estes. On April 4, 2018, at 6:11 a.m., Mr. Navarro sent Ms. Reitzer an email from his personal email carlosmnavarro25@gmail.com to Ms. Reitzer's personal email kelly.reitzer@gmail.com attached to which was a link to the pictures. A true copy of Mr. Navarro's email is attached hereto as **Exhibit 1**. Contained in the pictures was a picture of Mr. Navarro's penis. While Ms. Reitzer still has the email from Mr. Navarro, the link with the pictures is no longer active and appears to have been deleted from the cloud. Thus, it appears that Mr. Navarro has destroyed and/or spoliated evidence in this case.

20.    Ms. Reitzer was upset and offended by Mr. Navarro's outrageous behavior and never sought nor welcomed any pictures of Mr. Navarro's penis.  Ms. Reitzer forwarded Mr. Navarro's email to a friend, who confirmed that the link contained a picture of Mr. Navarro's penis.

21.    In or about November, 2019, Ms. Reitzer, Mr. Navarro, Ms. Estes and Farrah Betty, a new ICS employee, were in Galveston, Texas for a business-related conference.  At one point, both Ms. Betty and Mr. Navarro left the building to smoke and were outside at the same time.  When Ms. Betty returned, Ms. Estes became angry and belligerent towards her.  When Mr. Navarro returned, he stated to both Ms. Betty and Ms. Reitzer that Ms. Estes was "upset" because    she [Ms. Estes] thought that Ms. Betty was "outside sucking my cock."  Both Ms. Betty and Ms. Reitzer were offended by this outrageous statement.

22.    On another occasion, Ms. Reitzer sent Mr. Navarro a LinkedIn post about an article that applied to our services, which was written by a woman.  Mr. Navarro responded with a sexist comment noting that the author was "hot."  Thus, Mr. Navarro made it clear that he viewed women simply as sex objects.

23.    During Ms. Reitzer's employment with ICS, she and other employees were frequently exposed to Mr. Navarro and Ms. Estes' volatile relationship.  Mr. Navarro and Ms. Estes frequently cursed and yelled at each other during business conference calls.

24.    Mr. Navarro continued to sexually harass Ms. Reitzer during her employment with ICS, despite her repeated rejections of his sexual advances and her request that he cease his sexually harassing comments and conduct.

25.    In or about the end of 2020, Ms. Reitzer asked Mr. Navarro about her unpaid commissions and Mr. Navarro responded that he would get back to her.  Shortly thereafter, Mr. Navarro

gave Ms. Reitzer a performance review. This was the first performance review Ms. Reitzer had ever received during her employment with the company, and it was extremely negative. There was no factual basis for the negative performance evaluation. For example, and without limitation, the revenue report Mr. Navarro prepared as part of the performance evaluation as completely inaccurate and misrepresented Ms. Reitzer's true revenue generation.

26. In addition, Mr. Navarro also claimed, for the first time, that Ms. Reitzer was being paid on a draw as opposed to a salary and that she was required to earn her "salary" and benefits revenue before she was entitled to any commission.

27. Thus, after Ms. Reitzer complained about not being paid her commissions, Mr. Navarro retaliated against her by giving her a false performance evaluation and effectively changing her compensation structure in order to avoid paying Ms. Reitzer the commission she had earned.

28. After receiving the false performance evaluation, Ms. Reitzer formed the reasonable belief that ICS and/or Mr. Navarro were acting illegally and began to compile information to share with legal counsel in order to determine whether she had any viable causes of action against ICS. This action was protected conduct under the LAD, N.J.S.A. 10:5-12(d).

29. As a result of the foregoing, on February 3, 2021, Ms. Reitzer was constructively discharged by ICS.

30. ICS, by and through the actions of Mr. Navarro, created a hostile work environment in violation of the LAD.

31. ICS acted negligently, recklessly or intentionally by:

(a)   failing to have in place a well-publicized and enforced anti-sexual harassment policy;

(b)   failing to mandate anti-sexual harassment training for its supervisors, managers, agents, and employees;

(c)   failing to properly train its supervisors, managers, agents, and employees regarding compliance with any anti-sexual harassment policy promulgated by it;

(d)   failing to properly supervise its supervisors, managers, agents, and employees to ensure compliance with any anti-sexual harassment policy promulgated by it;

(e)   failing to make an unequivocal commitment from the top of the organization that any anti-sexual harassment policy is not just words but backed up by consistent practice;

(f)   failing to protect Ms. Reitzer from sexual harassment in the work place;

(g)   explicitly or implicitly condoning sexual harassment by its supervisors, managers, agents, and employees; and

(h)   failing to take appropriate disciplinary action against Defendant's supervisors, managers, agents and employees who sexually harassed Ms. Reitzer.

32.   Based on the foregoing, ICS negligently, recklessly and/or intentionally failed to take prompt, appropriate and reasonable remedial action to prevent, stop and remedy the sexual harassment aimed at Ms. Reitzer.  By and through its agents, ICS fostered a sexually harassing atmosphere and allowed actions which constitute sexual harassment in violation of the LAD.

33.   ICS, with malice or willful or wanton disregard of Ms. Reitzer's rights, fomented a hostile work environment in violation of the LAD.

34.   As a result of the foregoing, Ms. Reitzer has been harmed.

35.   As a direct and proximate result of ICS' knowing violations of Ms. Reitzer's rights under the LAD, Ms. Reitzer has sustained economic losses, severe emotional distress, personal physical injury, humiliation, embarrassment, mental anguish and loss of personal dignity. WHEREFORE, Plaintiff demands judgment against the Defendant for compensatory damages, punitive damages, attorneys' fees, costs of suit, together with such other relief as is deemed to be just and equitable by the Court.

**COUNT TWO**

**(Sexual Harassment in Violation of Title VII)**

36.   Plaintiff incorporates the preceding paragraphs of the Complaint as though set forth at full herein.

37.   ICS, by and through the actions of Mr. Navarro, created a hostile work environment in violation of Title VII.

38.   ICS acted negligently, recklessly or intentionally by:

(a)   failing to have in place a well-publicized and enforced anti-sexual harassment policy;

(b)   failing to mandate anti-sexual harassment training for its supervisors, managers, agents, and employees;

(c)   failing to properly train its supervisors, managers, agents, and employees regarding compliance with any anti-sexual harassment policy promulgated by it;

(d)   failing to properly supervise its supervisors, managers, agents, and employees to ensure compliance with any anti-sexual harassment policy promulgated by it;

    (e)     failing to make an unequivocal commitment from the top of the organization that any anti-sexual harassment policy is not just words but backed up by consistent practice;

    (f)     failing to protect Ms. Reitzer from sexual harassment in the work place;

    (g)    explicitly or implicitly condoning sexual harassment by its supervisors, managers, agents, and employees; and

    (h)    failing to take appropriate disciplinary action against Defendant's supervisors, managers, agents and employees who sexually harassed Ms. Reitzer.

39.    Based on the foregoing, ICS negligently, recklessly and/or intentionally failed to take prompt, appropriate and reasonable remedial action to prevent, stop and remedy the sexual harassment aimed at Ms. Reitzer. By and through its agents, ICS fostered a sexually harassing atmosphere and allowed actions which constitute sexual harassment in violation of Title VII.

40.    ICS, with malice or willful or wanton disregard of Ms. Reitzer's rights, fomented a hostile work environment in violation of Title VII.

41.    As a result of the foregoing, Ms. Reitzer has been harmed.

42.    As a direct and proximate result of ICS' knowing violations of Ms. Reitzer's rights under Title VII, Ms. Reitzer has sustained economic losses, severe emotional distress, personal physical injury, humiliation, embarrassment, mental anguish and loss of personal dignity.

    WHEREFORE, Plaintiff demands judgment against the Defendant for compensatory damages, punitive damages, attorneys' fees, costs of suit, together with such other relief as is deemed to be just and equitable by the Court.

## COUNT THREE

### (Violation of the Wage and Hour Law)

43.   Plaintiff incorporates the preceding paragraphs of the Complaint as though set forth at full herein.

44.   The Wage and Hour Law requires that an employer, like ICS, pay its employees the full amount of wages due and owing to them and the employer's failure to do so constitutes a violation of the statute, N.J.S.A. 34:11-4.10.

45.   The Wage and Hour Law defines the term "wages" as follows:

> "Wages" means the direct monetary compensation for labor or services rendered by an employee, where the amount is determined on a time, task, piece, or commission basis excluding any form of supplementary incentives and bonuses which are calculated independently of regular wages and paid in addition thereto.

[N.J.S.A. 34:11-4.1(c).]

46.   ICS deliberately failed and refused to pay Ms. Reitzer the commission she had earned and were due and owing to her.

47.   As a result, ICS has violated the Wage and Hour Law.

48.   As a result of the foregoing, Ms. Reitzer has been harmed.

49.   As a direct and proximate result of ICS' knowing violations of Ms. Reitzer's rights under the Wage and Hour Law, Ms. Reitzer has sustained economic losses.

WHEREFORE, Plaintiff demands judgment against ICS for compensatory damages, liquidated damages, attorneys' fees, costs of suit, together with such other relief as is deemed to be just and equitable by the Court.

## COUNT FOUR

### (Retaliation in Violation of the Wage and Hour Law)

50.  Plaintiff incorporates the preceding paragraphs of the Complaint by reference as though set forth at full herein.

51.  The Wage and Hour Law prohibits retaliation by an employer against an employee who has complained about the employer's failure to pay wages which are due and owing to the employee, N.J.S.A. 34:11-4.10(a).

52.  As set forth above, in or about the end of 2020, Ms. Reizter complained to Mr. Navarro about ICS' failure to pay her commissions which she had earned and which were due and owing to her.

53.  Thereafter, Mr. Navarro retaliated against Ms. Reizter by falsely criticizing her performance, unilaterally changing her compensation package retroactively and constructively terminating her employment.

54.  As such, Mr. Navarro and ICS retaliated against Ms. Reitzer in violation of the Wage and Hour Law, N.J.S.A. 34:11-4.10(a).

55.  As a result of the foregoing, Ms. Reitzer has been harmed.

56.  As a direct and proximate result of ICS' knowing violations of Ms. Reitzer's rights under the Wage and Hour Law, Ms. Reitzer has sustained economic losses.

WHEREFORE, Plaintiff demands judgment against ICS for compensatory damages, liquidated damages, attorneys' fees, costs of suit, together with such other relief as is deemed to be just and equitable by the Court.

JAVERBAUM WURGAFT HICKS
KAHN WIKSTROM & SININS, P.C.

By: *Heidi R. Weintraub /s/*
     HEIDI R. WEINTRAUB

By: *James E. Burden /s/*
     JAMES E. BURDEN

Dated: June __, 2022

## DEMAND TO PRESERVE EVIDENCE

Defendant is hereby directed and demanded to preserve all physical and electronic information pertaining in any way to Defendant's employment, to Defendant's cause of action and/or prayers for relief, to any defense to same, and pertaining to any party, including, but not limited to, electronic data storage, closed circuit TV footage, digital images, computer images, cache memory, searchable data, emails, spread sheets, employment files, memos, text messages and any and all online social or work related websites, entries on social networking sites (including, but not limited to, Facebook).

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as to all issues and claims.

## DESIGNATION OF TRIAL COUNSEL

Plaintiff hereby designates Heidi R. Weintraub, Esquire and James E. Burden, Esquire as trial counsel in this matter.

12

## CERTIFICATION

The undersigned counsel certifies that there are no other actions or arbitrations pending or contemplated involving the subject matter of this controversy at this time, and there are no additional known parties who should be joined to the present action at this time.  I certify the foregoing to be true.  I am aware if the above is willfully false, I am subject to punishment.

JAVERBAUM WURGAFT HICKS
KAHN WIKSTROM & SININS, P.C.


By: ___*Heidi R. Weintraub /s/*___
HEIDI R. WEINTRAUB

By: ___*James E. Burden /s/*___
JAMES E. BURDEN

Dated: June ___, 2022

# EXHIBIT 1

James E. Burden

| | |
|---|---|
| **From:** | James E. Burden |
| **Sent:** | Wednesday, July 7, 2021 5:07 PM |
| **To:** | James E. Burden |
| **Subject:** | FW: Norway_Trip - Invitation to collaborate |

---------- Forwarded message ----------
**From:** Carlos Navarro (via Google Drive) <carlosmnavarro25@gmail.com>
**Date:** Sat, Apr 14, 2018 at 6:11 AM
**Subject:** Norway_Trip - Invitation to collaborate
**To:** <kelly.reitzer@gmail.com>

Carlos Navarro has invited you to contribute to the following shared folder:

**Norway_Trip**

Norway pictures attached

Google Drive: Have all your files within reach from any device.
Google LLC, 1600 Amphitheatre Parkway, Mountain View, CA 94043, USA

Google

1

Case 2:22-cv-04440-MEF-JBC Document 1-3 Filed 07/06/22 Page 32 of 35 PageID: 89

MID-L-004486-21 06/08/2022 11:08:08 AM Pg 50 of 51 Trans ID: LCV20222169346
MID-L-004486-21 07/29/2021 4:31:49 PM Pg 1 of 2 Trans ID: LCV20211776028

# Civil Case Information Statement

## Case Details: MIDDLESEX | Civil Part Docket# L-004486-21

**Case Caption:** REITZER KELLY VS INNOVATIVE CLAIMS ST RATEGIES

**Case Initiation Date:** 07/29/2021

**Attorney Name:** JAMES EDWARD BURDEN

**Firm Name:** JAVERBAUM WURGAFT HICKS KAHN WIKSTROM & SININS

**Address:** 1000 HADDONFIELD-BERLIN RD STE 203 VOORHEES NJ 08043

**Phone:** 8565964100

**Name of Party:** PLAINTIFF : REITZER, KELLY

**Name of Defendant's Primary Insurance Company** (if known): Unknown

**Case Type:** LAW AGAINST DISCRIMINATION (LAD) CASES

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 6 JURORS

**Is this a professional malpractice case?** NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Are sexual abuse claims alleged by: KELLY REITZER?** NO

## THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** YES

**If yes, is that relationship:** Employer/Employee

**Does the statute governing this case provide for payment of fees by the losing party?** YES

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
    **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
    **If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

07/29/2021
Dated

/s/ JAMES EDWARD BURDEN
Signed

Case 2:22-cv-04440-MEF-JBC   Document 1-3   Filed 07/06/22   Page 33 of 35 PageID: 90

MID-L-004486-21   06/08/2022 11:08:08 AM   Pg 51 of 51   Trans ID: LCV20222169346
MID-L-004486-21   07/29/2021   Pg 2 of 2   Trans ID: LCV2021

JAVERBAUM WURGAFT HICKS
KAHN WIKSTROM & SININS, P.C.
Heidi R. Weintraub, Esquire / 008591993
James E. Burden, Esquire / 03331991
1000 Haddonfield-Berlin Road, Suite 203
Voorhees, NJ  08043
856-596-4100
Attorney for Plaintiff

| | |
|---|---|
| KELLY REITZER, <br><br> Plaintiff, <br><br> v. <br><br> INNOVATIVE CLAIMS STRATEGIES, LLC, <br><br> Defendant. <br><br> . | SUPERIOR COURT OF NEW JERSEY <br> MIDDLESEX COUNTY <br> LAW DIVISION <br><br> Civil Action <br><br> Docket No.:  MID-L-4486-21 <br><br> **PROOF OF SERVICE** |

I am a paralegal at Javerbaum Wurgaft Hicks Kahn Wikstrom & Sinins, counsel for the

Plaintiff in the above matter.  On the 8th day of June, 2002, I served the Motion to File First

Amended Complaint with supporting documents via email upon the following:

> Jonathan Hill, Esquire
> 52 South Street, Second Floor
> Morristown, NJ 07960
> Attorney for Defendant

I certify that the foregoing statements made by me are true.  I understand that if any of the

foregoing statements are willfully false, I am subject to punishment.

_Michelle Carney_ /s/
MICHELLE CARNEY

Dated: April 27, 2021